EXHIBIT 6

Filing # 54706072 E-Filed 04/05/2017 06:36:32 PM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CONSTANCE KAZANJIAN,
    Plaintiff

v.                                CASE NO.:

LEIGH ROTHSCHILD, SYMBOLOGY
INNOVATIONS, LLC, ROTHSCHILD
PATENT IMAGING, LLC, GEOGRAPHIC
LOCATION INNOVATIONS, LLC,
ROTHSCHILD BROADCAST DISTRIBUTION
SYSTEMS, LLC, ROTHSCHILD CONNECTED
DEVICES INNOVATIONS, LLC, ROTHSCHILD
DIGITAL CONFIRMATION, LLC, DISPLAY
TECHNOLOGIES, LLC, SCANNING
TECHNOLOGIES INNOVATIONS, LLC, ROTHSCHILD
BIOMETRIC SYSTEMS, DIGITAL VERIFICATION
SYSTEMS, EXAFER, LOCATION BASED SERVICES,
BATTERY CONSERVATION
INNOVATIONS and ROTHSCHILD TRUST HOLDINGS, LLC.
    Defendants,
_____/

## COMPLAINT

COMES NOW, the Plaintiff, CONSTANCE KAZANJIAN, by and through undersigned
counsel hereby sues the Defendants, LEIGH ROTHSCHILD, SYMBOLOGY
INNOVATIONS, LLC, ROTHSCHILD PATENT IMAGING, LLC, GEOGRAPHIC
LOCATION INNOVATIONS, LLC, ROTHSCHILD BROADCAST DISTRIBUTION
SYSTEMS, LLC, ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC,
ROTHSCHILD, DIGITAL CONFIRMATION, LLC, DISPLAY
TECHNOLOGIES, LLC, SCANNING TECHNOLOGIES INNOVATIONS, LLC,
ROTHSCHILD BIOMETRIC SYSTEMS, DIGITAL VERIFICATION
SYSTEMS, and ROTHSCHILD TRUST HOLDINGS, LLC and alleges as follows:

## JURISDICTIONAL ALLEGATIONS

1. This is an action for damages in excess of fifteen thousand dollars ($15,000), exclusive

   of interest and costs, and this court's jurisdiction is invoked pursuant thereto.

2.  Plaintiff, CONSTANCE KAZANJIAN, at all time material hereto, was and is a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

3.  Defendant, LEIGH ROTHSCHILD, is a resident of Miami-Dade County, Florida.

4.  At all times material, Defendant, SYMBOLOGY INNOVATIONS, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

5.  At all time material, ROTHSCHILD PATENT IMAGING, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

6.  At all time material, Defendant, GEOGRAPHIC LOCATION INNOVATIONS, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

7.  At all times material, Defendant, ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC, was operating a business venture in the state of Florida, committed a

tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

8. At all times material, Defendant, ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

9. At all times material, Defendant, ROTHSCHILD DIGITAL CONFIRMATION, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

10. At all times material, Defendant, DISPLAY TECHNOLOGIES, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

11. At all times material, Defendant, SCANNING TECHNOLOGIES INNOVATIONS, LLC, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

12. At all times material, Defendant, ROTHSCHILD BIOMETRIC SYSTEMS, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

13. At all times material, Defendant, DIGITAL VERIFICATION SYSTEMS, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

14. At all times material, Defendant LOCATION BASED SERVICES, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and

breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

15. At all times material, Defendant, Exafer, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

16. At all times material, Defendant, Battery Conservation Innovations, was operating a business venture in the state of Florida, committed a tortious act in the state of Florida, caused injury to persons in the state of Florida, was engaged in service activities within this state, was engaged in substantial and not isolated activity within this state, and breached a contract in this state by failing to perform acts required by the contract to be performed in this state.

17. Defendant, ROTHSCHILD TRUST HOLDINGS, LLC is a Florida Corporation authorized to do business in the state of Florida.

18. Venue is proper with this Court under Section §47.501, Fla. Stat., as Defendant, LEIGH ROTHSCHILD is a resident of Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

19. The Plaintiff, CONSTANCE KAZANJIAN (hereinafter KAZANJIAN) met the Defendant, LEIGH ROTHSCHILD (hereinafter "ROTHSCHILD") in 2000, during her time as the Director of Development at the University of Miami School of Business. In that capacity, KAZANJIAN, raised capital from various donors for the School of Business.

20. ROTHSCHILD was introduced as a potential donor and patent "guru," who was interested in making a seven figure donation to the University Of Miami School Of Business.

21. The relationship between ROTHSCHILD and KAZANJIAN grew as ROTHSCHILD attended donor functions and corroborated on the Business Plan Competition at the University Of Miami School Of Business.

22. Through her time at the University of Miami, KAZANJIAN and ROTHSCHILD's relationship developed not only as a business relationship but a friendship, as well.

23. KAZANJIAN and ROTHSCHILD's friendship continued even after KAZANJIAN left the University of Miami for better opportunities. KAZANJIAN continued to provide ROTHSCHILD access to her broad network of top business leaders and physicians as ROTHSCHILD needed, for ROTHSCHILD's development of patent ideas.

24. In 2011, ROTHSCHILD reached out to KAZANJIAN with a possible business opportunity. ROTHSCHILD and Robert Feingold, a business associate of ROTHSCHILD, had a business plan which entailed ROSTHCHILD placing all of his patents into a company for public offering.

25. After reviewing the business plan, KAZANJIAN expressed concerns and advised ROTHSCHILD not to risk all of his intellectual property. After taking into consideration, KAZANJIAN's advice, ROTHSCHILD and Robert Feingold decided it was not a viable business plan.

26. As of December 2011, ROTHSCHILD had 33 lifetime patents issued and 112 patents pending.

27. Following KAZANJIAN's advice, ROTHSCHILD decided to do a nine million ($9,000,000) dollar capital raise to file 300 new patents. KAZANJIAN and ROTHSCHILD worked together to find possible investors.

28. Although there were many possible investors, the investors and ROTHSCHILD disagreed with the business plan and thus KAZANJIAN and ROTHSCHILD were unsuccessful.

29. During the same period of time in 2011, KAZANJIAN was being considered and asked to be interviewed for various positions in the charitable funding world.

30. KAZANJIAN informed ROTHSCHILD that she was seriously considering a position in charitable funding being offered, as a result, ROTSCHILD informed KAZANJIAN that he enjoyed working with her and offered her a position at his company, INVENTAUR.

31. In order to induce KAZANJIAN to accept the position at INVENTAUR, ROTHSCHILD repeatedly assured KAZANJIAN that she would make substantially more income.

32. In order to further induce KAZANJIAN, ROTHSCHILD offered KAZANJIAN a position as vice president of Inventaur and he assured her that they would work out a compensation agreement that would please both parties.

33. As a result of these promises, which subsequently turned out to be false and misleading, KAZANJIAN accepted the offer at Inventaur and immediately informed her prospective new employer that she would not attend the final interview and that she no longer wished to be considered for the position.

34. In her capacity as vice president of Inventaur, KAZANJIAN was responsible for, but not limited to:

    a.  Overseeing, implementing, managing, and generating the strategic use of communication vehicles and relationship building activities to advance the mission of the company;

    b.  Serving as a liaison on events, opportunities and contracts;

    c.  Facilitating proactive relationships between the Company and the outside parties, such as potential inventors, investors, strategic partners, organizations, and other intellectual property human resources;

    d.  Collaborating with internal and external stakeholders for the purpose of building effective communication, enhancing relationships, and ensuring a high quality of interaction to achieve corporate goals and objectives;

    e.  Developing, planning, and/or coordinating various activities (e.g. corporate outreach, university outreach, philanthropic outreach, media/public relations functions, creative sessions, etc) for the purpose of enhancing relationships, improving services/programs, and promoting a positive public image; and

    f.  Advising the CEO, Chairman and/or Board of Directors on relationship issues and opportunities and any other functions deemed appropriate by the CEO, Chairman or Board of Directors.

35. In January 2012, KAZANJIAN and ROTHSCHILD attended the Consumer Electronics Show in Las Vegas, Nevada. At the show both parties met an attorney from Chicago who had just completed the sale of Nortel Networks patent portfolio for $4.5 billion dollars.

36. As a result of that meeting and KAZANJIAN's effort, KAZANJIAN and ROTHSCHILD hired the Chicago attorney's law firm to market the sale of Rothschild Digital Imaging portfolio.

37. As vice president of Inventaur, KAZANJIAN took initiative and contacted the head of the patent acquisition team at Samsung, Victor Song. KAZANJIAN also contacted Boris Teksler, head of Patent and Licensing for Apple, to offer the sale of patent #8,204,437, said offer was declined, however; they did express interest in other of ROTHSCHILD's patents.

38. In an effort to find possible investors, KAZANJIAN made several trips to Seattle to meet with patent acquisition teams. KAZANJIAN and ROTHSCHILD also met with Amazon's patent acquisition team.

39. Throughout the entire process of meeting patent acquisition teams, KAZANJIAN attended every meeting, to ensure that Inventaur was properly represented, although ROTHSCHILD chose not to attend every meeting.

40. None of the business trips were paid for by ROTHSCHILD; the agreement was that KAZANJIAN would be reimbursed for her business trips and expenses. However, KAZANJIAN was never reimbursed and these sums are still due and owing.

41. In 2013, KAZANJIAN and ROTHSCHILD, as a team, hired Shore, Chan, DePumpo to market the sale of ROTHSCHILD's portfolio. However, the sale of such portfolio was unsuccessful. It became readily apparent that ROTHSCHILD's portfolio was not sellable and therefore KAZANJIAN shifted Inventaur's business model to marketing and selling patents to possible inventors, investors, organizations, and companies.

42. Any profit in 2013, received by Inventaur was wrongfully and fraudulently converted by ROTHSCHILD and as such KAZANJIAN received no income from February 2013 to May 2014.

43. At that point, Inventaur's business model shifted from marketing and selling intellectual patents to becoming a non-practicing entity (NPE). KAZANJIAN and ROTHSCHILD focused on asserting ROTHSCHILD's intellectual property rights in court rather than selling his patents.

44. KAZANJIAN and ROTHSCHILD hired Shore, Chan, and DePumpo to assert the ROTHSCHILD's Mobile Imaging Innovations portfolio, # 7,450,163 and the ROTHSCHILD's Storage Retrieval Innovations portfolio #8,204,437.

45. In 2013, KAZANJIAN and ROTHSCHILD negotiated a contingency agreement with patent attorney, John Carey, to assert ROTHSCHILD's patent # 6,101,534. A suit was filed against Sony Computer Entertainment of America (SCEA).

46. KAZANJIAN was involved in all steps of the pending lawsuit, in fact KAZANJIAN, without ROTHSCHILD attended mediation in San Mateo, California.

47. KAZANIJIAN developed over 10 different companies, limited liability companies, and virtual offices, for the company, such as the following:

   a. Symbology Innovations, LLC

   b. Rothschild Patent Imaging, LLC

   c. Geographic Location Innovations, LLC

   d. Rothschild Broadcast Distributions Systems, LLC

   e. Rothschild Connected Devices Innovations, LLC

   f. Rothschild Digital Confirmation, LLC

       g.  Display Technologies, LLC

       h.  Scanning Technologies Innovations, LLC

       i.  Rothschild Biometric Systems,  and

       j.  Digital Verification Systems

48. The companies were created specifically to be named as Plaintiffs in patent infringement suits against various corporations across the United States.

49. KAZANJIAN began networking and building connections with consulting companies such as Mavexar, LLC, and patent attorneys in efforts to file more patent assertion suits in court.

50. Companies such as Mavexar, LLC, contract various law firms across the United States to file patent infringement suits against companies such as, Walt Disney, Mattel Inc, Lego Systems, and Johnson and Johnson Consumer Inc.

51. In 2014, KAZANJIAN and ROTHSCHILD negotiated an agreement with Ni, Wang, and Massand, to represent Rothschild Location Technologies patent #8,606,503 portfolio, relating to the sale, licensing, enforcement and settlement of the intellectual property.  As result of this agreement, sixty five (65) cases were filed from 2014-2016.

52. In 2015, KAZANJIAN and ROTHSCHILD retained Carey Rodriguez to assert ROTHSCHILD's patent #8,417,377 to file suit against The Coca-Cola Company. This case is now pending in federal court.

53. Eventually, KAZANJIAN and ROTHSCHILD had a significant number of cases pending in federal court throughout the United States.

54. Throughout the pendency of their business endeavor, both parties agreed that KAZANJIAN would get a percentage of settlement monies received as follows:

    a.  In May 2014, via electronic mail, ROTHSCHILD proposed that
KAZANJIAN receive 10% of all net revenue received and 6% off all
remaining net revenue. This was accepted by KAZANJIAN and she was
partially paid in accordance with this compensation schedule. (See attached
Exhibit A).

    b.  In March 2015, via electronic mail, ROTHSCHILD proposed KAZANJIAN
would receive 10% of settlements up to $500,000 dollars , 15% of settlements
up to $500,000 dollars and $1,000,000.00, and 17.5% of settlements of
$1,000,001 to $2,000,000, again this was accepted by KAZANJIAN and she
was partially paid in accordance with this schedule. (See attached Exhibit B).

55. ROTHSCHILD knew and was aware that KAZANJIAN's compensation was neither
satisfactory nor adequate for all the work and effort that KAZANJIAN put into the
assertion movement, and as a result, in June 2016, ROTHSCHILD offered to increase
her compensation to 20% on all settlement monies received from assertions initiated on
patents not belonging to ROTHSCHILD in addition to the 10% of settlement and/or
verdicts received from pending cases under $500,000 dollars and 20% of all settlement
and/or verdict funds received of pending cases over $500,000 dollars. (See Exhibit C)
KAZANJIAN accepted this offer.

56. The pending cases were not settling as quickly as ROTHSCHILD predicted and it soon
became economically unfeasible to continue to seek the services of companies such as
Mavexar, LLC. The parties have a two year contract with Mavexar, LLC, thus they
continue using their services for cases that have already been filed, but no longer refer
potential cases to them.

57. Due to the circumstances, KAZANJIAN developed a business model based on her interactions with companies such as Mavexar, LLC.

58. Not only, did KAZANJIAN create and manage several limited liability companies to assert ROTHSCHILD's patents, she also created companies to assert other patents belonging to other inventors, such as:

      a.  Exafer,

      b.  Location Based Services, and

      c.  Product Association Technologies.

59. KAZANJIAN directly retained attorneys on a contingent fee basis to raise patent infringement claims throughout the United States.

60. With KAZANJIAN's hard work and effort, KAZANJIAN designed and implemented one of the largest patent assertion companies in the United States.

61. During this time, ROTHSCHILD's patent portfolio increased significantly, from 33 lifetime patents and 112 patents pending to over 100 patents issued and over 100 patents pending.

62. Recognizing all the time, work, and effort that KAZANJIAN put into the assertion movement, ROTHSCHILD began to propose various compensation packages. Compensation discussions between ROTHSCHILD and KAZANJIAN resulted in various emails from ROTHSCHILD with various proposed compensation packages, as listed above.

63. ROTHSCHILD repeatedly assured KAZANJIAN that she would be adequately compensated for all the hard work and sweat she put into the assertion movement.

64. However, ROTHSCHILD has made late payments, in violation of the parties' agreement, set forth above. ROTHSCHILD has fraudulently converted money due and owing to KAZANJIAN for his own personal use. KAZANJIAN has not received any monies from any settlement monies received.

65. Despite ROTHSCHILD's assertions that he did not have the means or income to pay KAZANJIAN the money owed to her, ROTHSCHILD's net compensation from pending cases was approximately one million ($1,000,000.00) dollars/annually. Kazanjian's annually compensation was only approximately eighty thousand dollars ($80,000).

66. It is evident that ROTHSCHILD has no intention and never intended to make payment as described in the June 2016.  In December 2016 ROTHSCHILD, once again, attempted to modify the compensation agreement, by adding a provision allowing him to deduct $420,000.00 from his annual income, for "office expenses," which in return would only reduce KAZANJIAN's compensation. (See attached Exhibit D).

67. The "office expenses" included, but were not limited to, the salary of ROTHSCHILD's personal assistant, Inventaur's In house counsel, and an anticipated bookkeeper.

68. KAZANJIAN did not agree to the terms of the compensation package.

69. As a result, in February 2017, without good cause and without providing payment, or accounting, ROTHSCHILD informed KAZANJIAN that her position as Vice President of Inventaur was being terminated and attempted to fraudulently tender a check in the amount of $12,000, ROTHSCHILD failed to recognize KAZANJIAN's right to further payments of the contingent settlement agreements.

70. Upon information and belief, ROTHSCHILD is self-dealing. ROTHSCHILD pays his attorneys fees first, pays questionable costs, pays for expenses both unreasonable and

unrelated to the specific transaction. ROTHSCHILD improperly diverts the monies received in order to defraud KAZANJIAN and withhold monies that are due and owing.

71. ROTHSCHILD'S patents are issued to specific corporations such as:

    a.  Symbology Innovations, LLC

    b.  Rothschild Patent Imaging, LLC

    c.  Geographic Location Innovations, LLC

    d.  Rothschild Broadcast Distributions Systems, LLC

    e.  Rothschild Connected Devices Innovations, LLC

    f.  Rothschild Digital Confirmation, LLC

    g.  Display Technologies, LLC

    h.  Scanning Technologies Innovations, LLC

    i.  Rothschild Biometric Systems,  and

    j.  Digital Verification Systems

72. Rothschild transfers each patent to a specific corporation from those listed above. KAZANJIAN created all the listed corporations for the exclusive purpose of using the corporation to assert Rothschild's patents in Court.  However, when settlement monies are received they do not flow to the corporation named as a Plaintiff in the suit, instead the money is transferred to Defendant, ROTHSCHILD TRUST HOLDING, LLC., where it is fraudulently converted  for ROTHSCHILD's personal use in order to defraud creditors and KAZANJIAN, from monies that are due and owing.

73. Despite repeated requests to do so, ROTHSCHILD has refused to provide accounting of the monies received and the expenses incurred.

74. Each time money was received, ROTHSCHILD tried to renegotiate the compensation agreement with KAZANJIAN, he withheld her share of settlement monies, improperly covered "costs" that were not related to the specific transactions, he paid himself first and converted monies due and owing to KAZANJIAN.

75. ROTHSCHILD has been relying on KAZNAJIAN's honesty and good grace and has willfully and fraudulently withheld her money from the settlement monies received. ROTHSCHILD has failed to pay KAZANJIAN all monies due from cases settled in 2016-2017.  ROTHSCHILD has engaged in a course of fraudulent conduct in converting settlements monies received without justification or good cause.

76. ROTHSCHILD has wrongfully and fraudulently converted money that is due and owing to KAZANJIAN from the settlement monies received prior to her termination and funds received after her termination.

77. KAZANJIAN never received her percentage of the settlement monies that came in prior to her termination and has not received any settlement monies that have been received since her termination.

78. Currently there are patent infringement cases pending against but not limited to the following Defendants, for which ROTHSCHILD and  Defendant companies, Symbology Innovations, LLC, Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC, Rothschild Digital Confirmation, LLC, Scanning Technologies Innovations LLC, Rothschild Biometric Systems, Digital Verification Systems, Location Based Services, Exafer,  and Display Technologies, LLC,   owe

monies to KAZANJIAN pursuant to the parties agreement either by settlement or verdict:

    a.  The Coca-Cola Company

    b.  Sony

    c.  GoPro, Inc.

    d.  LG Electronics, et al;

    e.  Mattel, Inc;

    f.  Continental Tire North America;

    g.  Lego Systems, Inc;

    h.  Johnson & Johnson Consumer, Inc; and

    i.  Motorola Solutions, Inc.

A list of all pending cases is attached as Exhibit D.

79. ROTHSCHILD breached the terms of their agreement in that KAZANJIAN has yet to receive her share of the settlement funds and has failed to recognize her contingent right to payment upon settlement and/or verdict.

80. Despite KAZANJIAN's repeated request to do so, ROTHSCHILD has refused to provide accounting of the monies received and expenses incurred.

81. KAZANJIAN is due 10% of all monies received from pending cases under $500,000.00 and is due 20% of all monies received of pending cases over $500,000.00. Although ROTHSCHILD terminated KAZANJIAN's position; KAZANJIAN still has rights to future settlement monies and is due monies from past settled cases.

82. Throughout her time at Inventuar, KAZANJIAN created over 15 patent assertion companies and over 362 cases were filed in federal court.

83. To date, there are approximately 96 pending cases and KAZANJIAN is entitled to revenue from the settlement and/or verdicts of such cases.

84. ROTHSCHILD continues to live luxuriously; fraudulently diverts all monies received to ROTHSCHILD HOLDING, LLC, and frivolously spends the money that is due and owing to KAZANJIAN.

85. As a result of ROTHSCHILD actions, KAZANJIAN has suffered substantial damages.

## COUNT I
## BREACH OF CONTRACT

86. Plaintiff re-alleges and reaffirms paragraphs 1-85 as set forth fully herein.

87. KAZANJIAN and ROTHSCHILD agreed that KAZANJIAN would receive a percentage of all verdicts and/or settlements reached in pending patent infringement cases.

88. Currently there are over 80 patent infringement cases pending across the United States and ROTHSCHILD has no intention to pay KAZANJIAN as agreed upon. (See Exhibit E).

89. ROTHSCHILD has failed to recognize KAZANJIAN's right of future payments and past payments.

90. As a result of ROTHSCHILD's actions KAZANJIAN has suffered damages.

   **WHEREFORE**, KAZANJIAN demand judgment against the Defendant.

## COUNT II
## FRAUD IN THE INDUCEMENT

91. Plaintiff re-alleges and incorporates paragraphs 1-85 as fully set forth therein.

92. ROTHSCHILD intentionally made various false and fraudulent statements to KAZANJIAN regarding KAZANJIAN's compensation.

93. ROTHSCHILD misled KAZANJIAN and assured KAZANJIAN that she would receive a percentage of all verdicts and/or settlements reached in all pending patent infringement cases throughout the United States.

94. ROTHSCHILD induced KAZANJIAN to continue working without pay on initiating patent infringement cases across the United States by assuring her that she would receive a percentage of settlement monies received.

95. At the time of such assertions, ROTHSCHILD knew or should have known that he did not intend to compensate KAZANJIAN as agreed upon.

96. As soon as money came in, ROTHSCHILD unilaterally changed the terms of the compensation agreements in an effort to defraud KAZANJIAN.

97. KAZANJIAN relied upon the false misrepresentations and in doing so suffered damages.

    **Wherefore**, plaintiff demands judgment for damages against the Defendants and a trial by jury.

## COUNT III
## CONVERSION

**98.** Plaintiff KAZANJIAN, re-alleges and reaffirms paragraphs 1-85 as fully set forth herein

99. Pursuant to agreement, KAZANJIAN is clearly entitled to a percentage of the settlement monies received.

100.    ROTHSCHILD has wrongfully misappropriated KAZANJIAN's share of the settlement monies for his own benefit.

101.    When settlement monies are received ROTHSCHILD transfers monies to ROTHSCHILD TRUST HOLDING, LLC, for his own use.

**102.** Defendant, ROTHSCHILD has converted the settlement monies received belonging to KAZANJIAN to his own use.

**103.** As a result of ROTHSCHILD's actions, KAZANJIAN has been deprived of her property, of her percentage of the settlement monies received.

**WHEREFORE**, Plaintiff demands judgment for damages against LEIGH ROTHSCHILD, Symbology Innovations, LLC Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC, Rothschild Digital Confirmation, LLC, Display Technologies, LLC, Scanning Technologies Innovation, LLC, Rothschild Biometric Systems, Digital Verification Systems, Location Based Services, Exafer, and Rothschild Trust Holding, LLC.

## COUNT IV
## ACCOUNTING

104. KAZANJIAN re-alleges and reaffirms paragraphs 1-85 as fully set forth therein.

105. ROTHSCHILD induced KAZANJIAN to work on litigating patent infringement cases across the United States.

106. KAZANJIAN actively created over 10 corporate entities, retained counsel, and monitored all pending cases, and as a result ROTHSCHILD received settlement monies.

107. Settlement monies were received by the various Corporate Defendants; however, payment in accordance to the parties' compensation agreement was never received by KAZANJIAN.

108. KAZANJIAN has repeatedly requested an accounting of all the settlement monies received and costs and expenses incurred.

109. ROTHSCHILD has repeatedly refused to provide such accounting.

WHEREFORE, KAZANJIAN demands judgment for accounting and damages against LEIGH ROTHSCHILD, Symbology Innovations, LLC Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC, Rothschild Digital Confirmation, LLC, Display Technologies, LLC, Scanning Technologies Innovation, LLC, Rothschild Biometric Systems, Digital Verification Systems, Location Based Services, Exafer, and Rothschild Trust Holding, LLC.

## COUNT V
## APPOINTMENT OF A RECIEVER

110.    Plaintiff re-alleges and incorporates paragraphs 1-85 as fully set forth therein.

111.    ROTHSCHILD is engaged in self dealing by providing himself a luxurious lifestyle and excessive salary.

112.    Settlement monies have been received by Corporate Defendants, Symbology Innovations, LLC Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC, Rothschild Digital Confirmation, LLC, Display Technologies, LLC, Scanning Technologies Innovation, LLC, Rothschild Biometric Systems, Digital Verification Systems, Location Based Services, and Exafer. Upon receipt ROTHSCHILD transfers  all monies to ROTHSCHILD HOLDINGS, LLC, where the settlement monies are wrongfully and fraudulently converted for ROTHSCHILD's personal use.

113.    ROTHSCHILD continually refuses to compensate KAZANJIAN as agreed upon.

120.     ROTHSCHILD's actions are causing a waste and diminution of KAZANJIAN's assets and interests in the settlement monies received.

121.     KAZANJIAN has no adequate remedy at law to protect her interests without appointment of a receiver.

WHEREFORE, Plaintiff requests that the Court appoint a receiver to take control of Defendant entities records and its assets, and authorize a receiver to liquidate all Defendants as prescribed by law and grant such other relief as is deemed just and proper.

## COUNT VI
## REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

122.     Plaintiff re-alleges and incorporates paragraphs 1-85 as fully set forth herein.

123.     Due to ROTHSCHILD's self-dealing and transfer of funds, KAZANJIAN is without any compensation.  Furthermore, in light of the allegations herein Plaintiff is seriously concerned that anticipated future verdicts and/or settlement monies received will be transferred to ROTHSCHILD's personal trust account and various other personal accounts.

124.     If ROTHSCHILD, Symbology Innovations, LLC Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC, Rothschild Digital Confirmation, LLC, Display Technologies, LLC, Scanning Technologies Innovation, LLC, Rothschild Biometric Systems, Digital Verification Systems, Location Based Services, Exafer, and Rothschild Trust Holding, LLC, are not immediately enjoined from receiving further verdict and/or settlement money, the Plaintiff, KAZANJIAN

fears she will suffer serious and permanent damage. This concern is evidenced by
KAZANJIAN's termination as Vice President of Inventaur and her failure to receive any
compensation from ROTHSCHILD for the various settlements received.

125.      KAZANJIAN is rightfully entitled to compensation from the verdict and/or
settlements that have been received and will be received in the future.

126.      An appointment of a receiver is at least needed to ensure that the percentage of
the settlement monies received is protected and segregated so that ROTHSCHILD does
not convert, spend, and dissipate the monies received.

**WHEREFORE**, Plaintiff respectfully request that an Emergency Injunction be
granted against the Defendants  ROTHSCHILD, Symbology Innovations, LLC
Rothschild Patent Imaging, LLC, Geographic Location Innovations, LLC, Rothschild
Broadcast Distribution Systems, LLC, Rothschild Connected Devices Innovations, LLC,
Rothschild Digital Confirmation, LLC, Display Technologies, LLC, Scanning
Technologies Innovation, LLC, Rothschild Biometric Systems, Digital Verification
Systems, Location Based Services, and Exaferand request that a full hearing on this
issue be promptly set.

## TRIAL BY JURY

Plaintiff requests a trial by jury for all issues triable by jury.

Dated: April 4, 2017                    **HOFFMAN, LARIN, & AGNETTI, P.A.,**

                                        909 N. Miami Beach Blvd, Ste. 201
                                        North Miami Beach, Florida 33162
                                        Tel: 305-653-5555
                                        Designated Email: pleadings@hlalaw.com

                                        /s/ John B. Agnetti, Esquire
                                        **JOHN B. AGNETTI, ESQUIRE**
                                        Florida Bar No. 359841

**Connie Kazanjian**

| | |
|---|---|
| **From:** | Connie Kazanjian <ConnieKazanjian@aol.com> |
| **Sent:** | Monday, May 12, 2014 8:58 AM |
| **To:** | spicha@pichacpa.com |
| **Subject:** | FW: Proposed comp package for review- confidential |

Connie Kazanjian
305-726-6241
Inventaur, LLC
Executive Vice President
conniekazanjian@aol.com

**From:** Leigh Rothschild [mailto:leigh.rothschild@gmail.com]
**Sent:** Monday, May 12, 2014 2:34 AM
**To:** 'Connie Kazanjian'
**Subject:** Proposed comp package for review- confidential

From any revenue that comes in from patent sale or licensing (excludes Ambergen)

$75,000 will be segregated from first 4 revenue payments in a pool to pay for the catchup for patents

thereafter you will receive :

10% percent of net receipts to a total comp of one million dollars per year... and then
6% of all remaining net revenue thereafter without limitation

By example-

If Nissan pays us $250,000- than Global IP will take $75,000 in contingency and I will also pay any expenses (so far an invoice for approximately $1600). Net receipts should be approximately- $174,000

From that I will segregate $75,000 to be used for patent past and future expenses (e.g. covering fees and trying to resurrect abandoned patents. Note that this 75k deduction will only be done for first four revenue items paid and then cease and is intended to make sure our top priority of paying for the patents is met)

This will leave approximate net of $100,000 from which you will receive $10,000.00

Then if Sony pays us 10million in 5 installments of 2million each- John will take approximately 40% leaving us with 1,200,000. (assuming no actual expenses and if there are expenses should be very minimal). We will segregate $75,000 from this payment which leaves a net of $1,125,000 of which you will be paid $111,250.

If Wai sells the portfolio for 100m by example we pay 15m to Shore leaving 85m. We would then segregate 75k from this amount for the patent fund. (this calculation assumes that this is the first money received in). You would then


Exhibit

receive 1 million (cap at 10%) and an additional 4.5 million for the balance (based on the 6%) for a total cut of 5.5 million.

In addition as long as you are full time working on the company 6% of the total stock of the companies (subject to dilution same as Robert of I or any other shareholder) and the stock shall fully vest over a two year period.

Note that none of this includes the Ambergen comp deal as previously presented which will be in addition to this comp.

Once finalized we can memorialize this arrangement with a simple agreement.

I know you may have questions on this so we can discuss it after our meeting today.

In all cases I value you as a great great friend and a huge asset to me and to the company.


Note none of this has been discussed or vetted with Robert and I would not do that as your package is substantially greater (as it should be) then his, and I do not want to have him try to renegotiate. Any ag with you and I will be drawn up with an attorney other then RF.


Leigh



**Connie Kazanjian**

**From:** Leigh M. Rothschild <leigh.rothschild@gmail.com>
**Sent:** Friday, March 6, 2015 1:21 AM
**To:** Connie Kazanjian
**Subject:** Compensation

Connie,

I wanted to get you a revised comp offer before we hear (hopefully we will soon ) about the Wireless Digital RPX settlement. I did not want the offer to be in any way based on that settlement.

I want to reiterate how much I enjoy working with you and how well you and I work together, and how much we have accomplished in a relatively short period of time. I realize that the lack of material compensation has been very difficult for you (and I) but I do think that we are at the beginning of this effort.

In the end I realize that you have to do what is best to protect your interests and want you to know that if you decide not to stay I will be ok with that decision (but will miss you).

I also know you realize that the assets we are monetizing represent assets that I have spent millions of dollars obtaining (in prosecution and previous pre-Connie and Leigh litigation). The assets also represent over 25 years of my work as an inventor.

I propose that the 10% remain for any single settlements of $500,000 or less.

I propose that you receive 15% for any settlements of $500,000-1,000,000 and 17.5 percent of the next 1,000,001 to 2,000,000 and 20% for anything over 2,000,001. All settlement amounts would be based on the net I receive after paying legal expenses and attorney fees and finders fees, but before any other disbursements such as Robert's fees.

By examples- if 450,000 net comes in you will receive the same 10% we have been working with.

If 500,000 net comes in you would receive 15% of the entire amount or 75,000.

If 1,000,000 net comes in you would receive 15% of the first 500,000 or $75,000 and 17.5 percent of the next 500,000 (to total the full 1,000,000) or another $87,500 for a total of 162,500.

If 2 million net comes in you would receive 15% of the first 1million or 150,000 and 17.5 percent of the next 1 million or 175,000 for a total of $325,000.

If 2.5 million net comes in you would receive 15% of the first 1 million or 150,000 and 17.5 percent of the next 1 million or 175,000 and 20% of the next 500,000 or 100,000 for a total of $425,000.

I want you to know I have carefully considered the above.

Again, I will support whatever decision you make but hope that we can continue to work together.

1


Exhibit B

## Connie Kazanjian

| | |
|---|---|
| **From:** | Leigh M. Rothschild <leigh.rothschild@gmail.com> |
| **Sent:** | Sunday, June 5, 2016 2:53 AM |
| **To:** | Connie Kazanjian |
| **Subject:** | proposed fee arrangement from June 1st 2016 onward |

RCDI- 10%

Rfleet _Jay and Neal are handling - 10%

RBDS- 10%

Symbology- 10%

Display- 15%

534- 10% and 20% over 500k as previously stated which applies to all our cases

Texas Patent Imaging - 10%

Digital Signature- 20%

Inventaur Management cases like Exafer or Privamed- 20%

Rothschild Scanning- 15%

Assignment Patent case (to be reviewed by Eugenio)- 20%

Travel patent (John Carey) – To be determined depending on his final fee structure

Mitek- 10%

Rothschild Beverage (John Carey)- 15%

Biometrics (to be reviewed by Niro)- to be determined depending on their fee structure



Exhibit C

## Connie Kazanjian

| | |
|---|---|
| **From:** | Leigh M. Rothschild <leigh@inventaur.com> |
| **Sent:** | Friday, December 16, 2016 2:02 AM |
| **To:** | Connie Kazanjian |
| **Cc:** | 'MICHAEL WASSSERMAN, CPA' |
| **Subject:** | Compensation Package for 2017 |

Connie,

As we approach the New Year I wanted to lay out my compensation proposal to you. It took a while to get all this together as I am sure you will appreciate. I had promised several months ago that I would work out the proposal. I have been awaiting Mike Wasserman gathering the information for me and then working with him to come up with an arrangement that works for everyone.

Our current base overhead annually (money I must pay every month) includes:

130,000 salary to Adam (with tax contribution factored in and his other benefits)
70,000 to Chris Medina (At Mikes suggestion I am moving him over to Inventaur)
75,000 in general overhead (I PR allowances, Outside accountants, Lexis Nexus, Office expense, etc.)
70,000 in patent expense to pay Ferrouli for PTO filings for current patents we are litigating and maintenance fees on our patent
45,000 for a bookkeeper which I will hire in January

$390,000

$30,000 as a reserve

(Note this does not include paid amounts to Robert which this year will be about $30,000)

$420,000 total annual overhead

This means before I take a dime out of the business or pay you I have a current overhead factor of $35,000 per month.

The arrangement will be to split with you after that $35,000 is received in each month. I cannot pay you or I before paying the $35,000 first.

My proposal   is a 20% split for every dollar that comes in after  the first $35,000 per month
20% for you and 80% for me.

This 20- 80  split would go up to the first $750,000 received in after the overhead factor  (35k per month) is paid.

That means that your base compensation  for the first $750,000 will be $150,000.



1

After the first $750,000 Mike Wasserman  (based on the  internal information based from our bookkeeper) will  factor in  additional overhead vs our total revenue  and figure out our net profit in the after the annual year closes.  Of course he will produce a statement that will be given  to you.

We will then pay you 10% additional on the profit.

So by example if next year we take in 3million dollars Gross  (this is net after the attorneys and advisors take their money off the top) after the $420,000 overhead factor it would leave $2,580,000 profit (assuming no additional overhead/expenses).   You would have already received $150,000 in compensation.   From the net profit   of $1,830,000  your split would be another $183,000.

I think based on the number of portfolios that  we will have going we should Gross at least 3million next year and hopefully more.

Please note that all calculations are done a monthly basis so you will not have to wait for your money.  Meaning  that after $35,000 comes in each month you receive 20% of the next dollars in up to $12,500 per month ( equaling the annual of the 150k).  If one month you receive less than the $12,500 then the next month if money is available based on the formula you would receive more  dollars to get the number to the $12,500 per month number.   The further split of 10% will come when the year closes out.

We will need to start this arrangement (if you agree) on January 1st.

I value your help in the Company in the past and hopefully in the future,  and look forward to continuing to work with you to build the Company.

Thanks,
Leigh


I

## PENDING LITIGATION

1. Symbology Innovations, LLC v. Mattel, Inc.
   Case No. 6:16-cv-02202
   Middle District of Florida

2. Symbology Innovations, LLC v. Continental Tire North America
   Case No. 2:17-cv-00084
   Eastern District of Virginia

3. Symbology Innovations, LLC v. Kwikset Corporation
   Case No. 2:16-cv-00599
   Eastern District of Texas

4. Symbology Innovations, LLC v. Technogym USA Corp.
   Case No. 2:17-cv-00029
   Eastern District of Texas

5. Symbology Innovations, LLC v. Smart, LLC d/b/a Smart Tuititon
   Case No. 2:17-cv-00027
   Eastern District of Texas

6. Symbology Innovations, LLC v. Delsey Luggage, Inc.
   Case No. 2:17-cv-00022
   Eastern District of Texas

7. Symbology Innovations, LLC v. Lego Systems, Inc.
   2:17-cv-00086
   Eastern District of Virginia

8. Symbology Innovations, LLC v. Moen Inc.
   Case No. 2:17-cv-00025
   Eastern District of Texas

9. Symbology Innovations, LLV v. Mars, Inc.
   Case No. 2:17-cv-00085
   Eastern District of Virginia

10. Symbology Innovations, LLC v. Darden Corp.
    Case No. 0:16-cv-02199
    Middle District of Florida

11. Symbology Innovations, LLC v. TCL Corp.
    Case No. 1:17-cv-00028



Exhibit

Eastern District of Texas

12. Symbology Innovations, LLC v. Hilton Worldwide, Inc.
Case No. 6:16-cv-02200
Middle District of Florida

13. Symbology Innovations, LLC v. Ergotron, Inc., d/b/a OmniMount
Case No. 2:17-cv-00023
Eastern District of Texas

14. Symbology Innovations, LLC v. Circle K Stores, Inc
Case No.: 6:16-02198
Middle District of Florida

15. Symbology Innovations, LLC v. Paper Source, Inc.
Case No. 1:17-cv-00253
Northern District of Illinois

16. Symbology Innovations, LLC v. Home Depot
Case No. 1:16-cv-10750
Northern District of Illinois

17. Symbology Innovations, LLC v. Jasco Products Company, LLC
Case No. 2:17-cv-00002
Eastern District of Virginia

18. Symbology Innovations, LLC v. CustomInk, LLC.
Case No. 2:17-cv-00001
Eastern District of Virginia

19. Symbology Innovations, LLC v. The Walt Disney Company and Disney Enterprises, Inc.
Case No. 6:16-cv-02205
Middle District of Florida

20. Symbology Innovations, LLC v. First National Bank of Omaha
Case No. 1:16-cv-10743
Northern District of Illinois

21. Symbology Innovations, LLC v. Hyatt Corp.
Case No. 6:16-02201
Middle District of Florida

22. Symbology Innovations, LLC v. TEN: The Enthusiast Network Magazines, LLC d/b/a Motor Trend
    Case No. 2:17-cv-00030
    Eastern District of Texas

23. Symbology Innovations, LLC v. Northern Trust Corp.
    Case No. 6:16-cv-02203
    Middle District of Florida

24. Symbology Innovations, LLC v. Harman Int. Industries, Inc. d/b/a JBL
    Case No.: 2:17-cv-00024
    Eastern District of Texas

25. Symbology Innovations, LLC v. Motorola Solutions, Inc.
    Case No. 2:17-cv-00026
    Eastern District of Texas

26. Symbology Innovations, LLV v. The Mall at Millenia Promotional Fund, Inc.
    Case No.: 6:16-cv-02204
    Middle District of Florida

27. Symbology Innovations LLC v. Johnson & Johnson Consumer, Inc.
    Case No. 1:16-cv-10752
    Northern District of Illinois

28. Symbology Innovations, LLC v. Bath & Body Works Direct, Inc.
    Case No. 6:16-cv-02197
    Middle District of Florida

29. Symbology Innovations, LLC v. Citibank, N.A.
    Case No. 2:16-cv-00450
    Eastern District of Texas

30. Rothschild Broadcast Distribution Systems, LLC v. Pluralsight LLC
    Case No.: 2:16-cv-01264
    Eastern District of Texas

31. Rothschild Broadcast Distribution Systems, LLC v. Udemy, Inc.
    Case No. 2:16-01448
    Eastern District of Texas

32. Rothschild Broadcast Distribution Systems, LLC  v. Beachbody, LLC
    Case No. 2:16-cv-01261
    Eastern District of Texas

33. Rothschild Broadcast Distribution Systems, LLC  v. The Walt Disney Company
    Case No. 2:16-cv-01266
    Eastern District of Texas

34. Rothschild Broadcast Distribution Systems, LLC  v CBT Nuggets, LLC
    Case No.: 2:16-cv-01262
    Eastern District of Texas

35. Rothschild Broadcast Distribution Systems, LLC  v Lynda.com, Inc.
    Case No. 2:16-01263
    Northern District of Texas

36. Rothschild Patent Imaging, LLC v. Arcsoft, Inc.
    Case No. 2:16-cv-01376

37. Rothschild Patent Imaging, LLC v.  Edimax Computer Co. , d/b/a Edimax Technology Co., Ltd
    Case No. 2:16-cv-013777

38. Rothschild Patent Imaging, LLC v. Lorex By Flir f/k/a Lorex Technology, Inc.
    Case No. 2:16-cv-01377

39. Rothschild Patent Imaging, LLC v. LT Security, Inc.
    Case No. 2:16-cv-01378

40. Rothschild Patent Imaging, LLC v. Netgear, Inc.
    Case No. 2:16-cv-01380

41. Rothschild Patent Imaging, LLC v. Swann Communications USA, Inc.
    Case No. 5:16-01381

42. Rothschild Patent Imaging, LLC v. Trendent, Inc.
    Case No. 2:16-cv-01382

43. Rothschild Patent Imaging, LLC v. Vivotek USA,Inc.
    Case No. 2:16-01383

44. Texas Patent Imaging, LLC v. Fujifilm Holdings America Corp.
    Case NO. 2:16-cv-00356
    Eastern District of Florida

45. Texas Patent Imagin, LLC v. Leica Camera, Inc., et al
    Case No.: 2:16-cv-00358
    Eastern District of Texas

46. Geographic Location Innovations, LLC v. Bridgestone Americas Tire, Operations, LLC
    Case No.: 2:16-cv-01330
    Eastern District of Texas

47. Geographic Location Innovations, LLC v. AutoNation, Inc.
    Case No. 2:16-cv-01326
    Eastern District of Texas

48. Geographic Location Innovations, LLC v. The Home Depot, Inc.
    Case No. 2:16-cv-01331
    Eastern District of Texas

49. Geographic Location Innovations, LLC v. Nordstrom, Inc.

Case No. 2:16-cv-01332
Eastern District of Texas

50. Geographic Location Innovations, LLC v. Safeway Inc. d/b/a Tom Thumb
Case No. 2:16-cv-01333
Eastern District of Texas

51. Geographic Location Innovations, LLC v. Dollar Tree Stores, Inc.
Case No. 2:16-cv-01329
Eastern District of Texas

52. Geographic Location Innovations, LLC v. Discount Tire Co. d/b/a Discount Tire  d/b/a America's
Tire
Case No. 2:16-cv-01327
Eastern District of Texas

53. Geographic Location Innovations, LLC v. United Parcel Service, Inc., et al
Case No. 2:16-cv-01336
Eastern District of Texas

54. Geographic Location Innovations, LLC v.  U-Haul Int. Inc.
Case No. 2:16-cv-01335
Eastern District of Texas

55. Scanning Technologies Innovations, LLC v. Bindo Labs, Inc.
Case No. 2:16-cv-01077
Eastern District of Texas

56. Display Technologies, LLC v. HTC America, Inc
Case No. 2:17-cv-00070
Eastern District of Texas

57. Display Technologies, LLC v. LG Electronics USA, Inc.
    Case No.: 2:17-cv-00069
    Eastern District of Texas

58. Display Technologies, LLC v. ZTE (USA), Inc.
    Case No. 2:17-00068
    Eastern District of Texas

59. Display Technologies, LLC v. Blu Products, Inc.
    Case No. 2:17-cv- 00067
    Eastern District of Texas

60. Location Based Services, LLC v. Garmin International, Inc.
    Case No. 2:17-cv-00133

61. Location Based Services, LLC v. MITAC Digital Corp.
    Case No. 2:17-cv-00134

62. Location Based Services, LLC v. RM Acquisition, LLC d/b/a Rand McNally
    Case No.: 2:17-cv-00135

63. Rothschild Biometric Systems, LLC v. USAA Savings Bank
    Case No. 2:17-cv-00061
    Eastern District of Texas

64. Rothschild Digital Confirmation, LLC v. Coresystems AG
    Case No.: 2:16-cv-01478
    Eastern District of Texas

65. Rothschild Digital Confirmation, LLC v. Synchroteam
    Case No. 2:16-cv-01481
    Eastern District of Texas

66. Rothschild Digital Confirmation, LLC v. DESCO, LLC
    Case No. 2:16-cv-01479

Eastern District of Texas

67. Rothschild Digital Confirmation, LLC v. Oracle America, Inc.
    Case No. 2:17-cv-00013
    Eastern District of Texas

68. Rothschild Digital Confirmation, LLC v. WorkWave, LLC.
    Case No. 2:16-cv-00974
    Eastern District of Texas

69. Rothschild Digital Confirmation, LLC v. ClickSoftwware, Inc.
    Case No. 2:16-cv-01477
    Eastern District of Texas

70. Rothschild Digital Confirmation, LLC v. BlueFolder Software, Inc.
    Case No. 2:16-cv-01476
    Eastern District of Texas

71. Rothschild Digital Confirmation, LLC v. Abaqus inc., d/b/a myGeoTracking
    Case No. 2:16-cv-01475
    Eastern District of Texas

72. Battery Conservation Innovation, LLC v. Eastern Sports, Inc.
    Case No. 2:16-cv-01101
    Eastern District of Texas

73. Battery Conservation Innovation, LLC v. Zepp Sports, Inc
    Case No. 2:16-cv-01104
    Eastern District of Texas

74. Battery Conservation Innovation, LLC v. Sony Corp. of America
    Case No. 2:16-cv-01102
    Eastern District of Texas

84. Rothschild Connected Devices Innovations, LLC v. LG Electronics, Inc. et al.
    Case No. 2:16-cv-01445
    Eastern District of Florida


85. Rothschild Connected Devices Innovations, LLC v. Whirlpool Corp.
    Case No. 2:16-cv-01446
    Eastern District of Texas